[No. 5449.]

## MOLLIE GIBSON CONSOLIDATED MINING AND MILLLNG COMPANY ET AL., v. McNICHOLS ET AL.

FIXTURES—*Concentrating tables*, in a mill for dressing ores, secured to supports resting upon or attached to the foundation of the mill, and which are held in place by uprights firmly secured to the building, fed with water by pipes fastened to the building, and operated by machinery which is part of the mill, the tables being necessary to the complete and efficient character of the mill, as such, are parcel of the realty—(58, 59).

The manner in which the owners made return thereof to the assessor, for taxation, or that the assessor designated the machinery of the mill as personalty, is immaterial—(59).

And an agreement between the two mining corporations which erected in the mill, that either, ceasing to use it, may remove the machinery belonging to it exclusively, or, on certain conditions, machinery owned jointly, does not affect the question, until, at least, the stipulated condition has arrived—(59).

*Appeal from Pitkin District Court*—HON. JOHN T. SHUMATE, Judge.

Mr. WILLIAM O'BRIEN for appellants.

Mr. H. W. CLARK for appellees.

The appellants were the joint owners of a concentrating mill building and the machinery therein, which was used for concentrating the ores mined from their properties. The appellees were, respectively, treasurer and sheriff of Pitkin county. In his official capacity, the treasurer issued to the appellee Irving, as sheriff, a distraint warrant, commanding him to distrain the goods and chattels of the appellants for the amount of the tax assessed against their mill for the years 1900 and 1901. Under this warrant the sheriff seized twenty-seven Fru-Vanner concentrating tables in the mill, and caused notice of sale thereof to be posted. Appellants, as plaintiffs, then brought suit against appel-

lees, to restrain the sale, alleging that the tables were fixtures attached to the land and mill building; that they were fastened to this building by heavy bolts or fastenings, and are, and were, a part of the mill, and therefore, could not be seized and sold as personal property. On application of the plaintiffs, a temporary restraining order issued, requiring the defendants to desist from selling or in any manner interfering with plaintiffs' possession of the tables. To the complaint the defendants filed an answer and cross-complaint. Plaintiffs answered the latter, to which the defendants replied; but it is not necessary to give a synopsis of these pleadings, as, by stipulation, the parties agreed at the trial that the question presented by the pleadings was, whether the tables were personal property or fixtures.

The schedules returned to the assessor with respect to the mill by The Mollie Gibson Company, which was the basis of the distraint warrant, showed the following: For the year 1900 it was headed: "The Mollie Gibson Argentum-Juniata Joint Mill," and was described as "Mill, including Machinery and Improvements." Opposite the word "Machinery" was written "$6500," and opposite "Improvements," "$5000." This was subsequently changed by the Board of Equalization by raising the valuation of the machinery two thousand dollars. For the year 1901 the schedule was headed as above and listed: "Mill, Machinery and Improvements," "$12,000.00." This was changed by the assessor by writing under the words "Mill, Machinery and Improvements," "Divided as follows:" "Machinery, $11,335" and "Improvements, $6665.00." In making out the assessment roll, it appears the assessor designated improvements as real estate, and the machinry as personal property.

It appears that the tables are set up and bolted or secured to supports resting upon, or attached to, foun-

dations secured to the mill building proper, and are held in place by uprights, firmly secured to the building; that the pipes or other appliances carrying water to the tables, though not fastened to them, are fastened to parts of the building; that the power to operate the tables is transmitted from an overhead shaft or shafts, upon which pulleys are placed connecting with the pulleys on the tables by means of belts. In adjusting the tables, it is necessary at times to raise or lower them, and arrangements are made for this purpose. It also appears that the mill is used for concentrating ores, and that the tables are a part of the machinery placed therein for that purpose, which consists of various appliances, such as crushers, rolls, and the engine and boilers which supply the motive power. The mill was constructed jointly by the plaintiffs for the purpose of using it jointly in concentrating ores from their respective properties, and to this end they entered into a contract which, so far as material to consider, was as follows:

"Whereas, the said companies have jointly constructed a mill, known as "The Mollie Gibson-Argentum-Juniata Joint Mill," hereinafter called the "Joint Mill," for the concentration of ores mined, and to be mined, from the properties of said companies, or for custom account; and,

"Whereas, the said joint mill, as now constructed, has a nominal daily capacity of one hundred and fifty tons of ore, fifty tons of which capacity is reserved and intended for the use of the Gibson Company, exclusively, and one hundred tons thereof is reserved and intended for the use of the Argentum Company exclusively; and,

"Whereas, certain portions of said joint mill and machinery are to be, and must be, used jointly by the parties hereto, and certain other portions of the ma-

chinery are reserved for the exclusive use for one or the other of the parties hereto; and,

"Whereas, the said joint mill, with its appurtenances, has, with the consent of the Gibson Company, been built upon a portion of the mining claims of said Gibson Company (here follows the description of such claims)."

The contract then makes provision for the enjoyment of certain easements, how expenses are to be borne for new machinery, and the operation of the plant, and then, for the purpose of fixing the rights of the parties in case one ceases to use the mill, or both cease to use it, makes the following provisions:

"Seventh: In case either of the parties hereto shall desire to cease operating and participating in construction or operation expenses of the joint mill, it shall have the right to do so, upon first giving ten days' notice of such intention, and, in that event, a rental of ten per cent. per annum shall be paid by the company continuing to operate for the use of the interest of the other in such portions as it may use the machinery and appliances, which are owned jointly by the parties hereto. The party continuing to operate shall bear all expenses of construction and operation."  *  *  *

"Twelfth: In case either of the parties hereto cease all operations in the joint mill, the party continuing to operate shall have the right to rent the interest of the other in the joint property at a rental of ten per cent. per annum for as long a period as it continues to operate; but the party ceasing operations shall have the right to remove, sell or otherwise dispose of that portion of the machinery in the joint mill which is owned by it exclusively, providing such party is not in default to the other for any proportion of construction or operating expenses."  *  *  *

"Sixteenth: This agreement shall cease and terminate upon the expiration of six months from the date

of cessation of continuous working hereunder by both parties hereto, or in the event that work resumed by either of the parties hereto during said period of six months shall not be prosecuted continuously for at least three months. Upon termination of the contract as aforesaid, either party may, upon ten days' notice in writing to the other, remove all joint machinery and appliances, accounting to the other party for its interest therein."

Upon this synopsis of the testimony, which presents the material facts and regarding which there is no dispute, the court found that the tables were properly assessed and listed as personal property, and subject to be distrained as such for the taxes due upon personal property of the plaintiffs, as shown by the assessments for the years 1900 and 1901, and rendered judgment to the effect that the temporary injunction be dissolved, and the cause dismissed. Plaintiffs have appealed.

Mr. JUSTICE GABBERT delivered the opinion of the court.

When a building is erected for a particular purpose, and machinery placed therein reasonably necessary to effectuate that purpose, and in some substantial manner attached to such building, it becomes part of the realty. *Roseville A. M. Co. v. Iowa G. M. Co.,* 15 Colo. 29; *Farmers' L. & T. Co. v. Minn. E. & M. Co.,* 35 Minn. 543; *Symonds v. Harris,* 81 Am. Dec. 552; 51 Me. 14; *Laflin v. Griffiths,* 35 Barb. (N. Y.) 58; *Parsons v. Copeland,* 38 Me. 537; *Gray v. Holdship,* 17 Am. Dec. 680; 17 S. & R. 413.

. Applying this test to the facts of the case at bar, we think it is clear that the Fru-Vanner tables were fixtures. The mill building certainly is real estate. It was constructed for the purpose of enclosing the machinery placed therein; without the machinery it would be useless as a mill for the reduction of ores. The pur-

pose of the owners, in erecting the plant, which includes the building and the machinery, was to construct a concentrating plant.   To render it suitable for the use designed, the tables were placed therein and fastened to the building in such manner, and to such an extent, as would render them adaptable to promote the ends for which the entire plant was constructed.   To remove the tables would reduce the efficiency of the mill, if not entirely destroy it, just as much as to remove other distinct pieces of machinery therein, like the rolls, the crushers, or the motive power, all of which, and many other appliances, are essential and necessary to assemble, place, arrange and connect as a whole, in order to construct, complete and operate a plant for the reduction of ore.

The fact that the return to the assessor made on behalf of the owners stated valuations of improvements one sum, and machinery another, or that the mill, machinery and improvements were returned under one valuation, does not, when considered in the light of the fact that the machinery was unquestionably a part of the realty, establish that it was personal property; neither does the fact that the assessor designated the machinery upon the assessment roll as personal property cut any figure.   His mistaken notion that the machinery was personal property, when, in fact, it was part of the real estate, cannot change the real situation or the real facts.

On behalf of the defendants much stress was laid upon the provisions of the contract between the plaintiffs, whereby the party ceasing to use the mill may remove the machinery belonging to it, exclusively, or, in case of the termination of the contract, either party, upon notice to the other, may remove all joint machinery, accounting to the other for its interest therein. These are merely provisions for the protection of the parties under certain contingencies, but the fact that

either party may remove the machinery belonging to it exclusively, or the machinery owned jointly, does not make such machinery personal property until such time, at least, when, by the terms of the contract, the right to remove exists.

The judgment of the district court is reversed and the cause remanded for further proceedings in harmony with the views expressed in this opinion.     *Reversed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE HILL concur.