RECONSTRUCTION FINANCE CORPORATION *v.* BEAVER COUNTY.

No. 40.   Argued April 30, 1946.—Decided May 13, 1946.

*Robert L. Stern* argued the cause for appellant. With him on the brief were *Solicitor General McGrath, John D. Goodloe, J. Bowers Campbell, Henry J. Crawford* and *Harold F. Reed.*

*John G. Marshall* and *Edward G. Bothwell* argued the cause and filed a brief for appellee.

By special leave of Court, *John L. Nourse,* Deputy Attorney General of California, argued the cause for the State of California, and *Sherrill Halbert* argued the cause for Stanislaus County, as *amici curiae.* With them on a

brief filed for that State, as *amicus curiae,* were *Robert W. Kenny,* Attorney General, *Leslie A. Cleary* and *Harold W. Kennedy,* urging affirmance.

*Edward G. Bothwell* filed a brief for Allegheny County, Pa., as *amicus curiae,* in support of appellee.

MR. JUSTICE BLACK delivered the opinion of the Court.

By § 10 of the Reconstruction Finance Corporation Act, as amended, 47 Stat. 5, 9; 55 Stat. 248, Congress made it clear that it did not permit States and local governments to impose taxes of any kind on the franchise, capital, reserves, surplus, income, loans, and personal property of the Reconstruction Finance Corporation or any of its subsidiary corporations.[1]  Congress provided in the same section that "any real property" of these governmental agencies "shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed."  The Supreme Court of Pennsylvania sustained the imposition of a tax on certain machinery owned and used in Beaver County, Pennsylvania, by the Defense Plant Corporation, an RFC subsidiary.[2]  The question presented on this appeal from the Supreme Court judgment is whether the Supreme Court's holding that this machinery is "subject to" a local "real property" tax means that the Pennsylvania tax statute, 72 Purdon's Pennsylvania Stat. (1936) 5020–201, as applied, conflicts with § 10 of the Reconstruction Finance Corporation Act.  This appeal, thus, challenges the validity of a state statute sustained by the highest

---

[1] As to the constitutional tax immunity of governmental properties see *United States* v. *County of Allegheny,* 322 U. S. 174.  See also *Pittman* v. *Home Owners' Loan Corporation,* 308 U. S. 21; *Maricopa County* v. *Valley National Bank,* 318 U. S. 357.

[2] 350 Pa. 520, 39 A. 2d 713.

court of the State and raises a substantial federal question. We have jurisdiction under 28 U. S. C. § 344 (a) and appellee's motion to dismiss is denied.

In 1941 Defense Plant Corporation [3] acquired certain land in Beaver County. It erected buildings on the property and equipped them with machinery and attachments necessary and essential to the existence and operation of a manufacturing plant for aircraft propellers. The plant, thus fully equipped, was leased to Curtiss-Wright Corporation, to carry out its war contracts with the Government for the manufacture of propellers. Most of the machinery was heavy, not attached to the buildings, and was held in place by its own weight. Other portions of the machinery were attached by easily removable screws and bolts, and some of the equipment and fixtures could be moved from place to place within the plant. The lease contract with Curtiss-Wright authorized the Government to receive and to replace existing equipment, and parts of the machinery appear to have been frequently interchanged and replaced as the convenience of the Government required. The lease contract also provided that the machinery should "remain personalty notwithstanding the fact it may be affixed or attached to realty."

The Government contends that under these circumstances the machinery was not "real" but was "personal" property, and that therefore its taxation was forbidden by Congress. The "real property" which Congress made "subject" to state taxation should in the Government's view be limited to "land and buildings and those fixtures

---

[3] By joint resolution of Congress, 59 Stat. 310, Defense Plant Corporation was dissolved and all of its functions, powers, duties and liabilities were transferred to Reconstruction Finance Corporation. Pursuant to this joint resolution this Court granted a motion to substitute Reconstruction Finance Corporation as party appellant in succession to Defense Plant Corporation.

which are so integrated with the buildings as to be uniformly, or, at most, generally, regarded as real property." "Real property," within this definition, would include buildings and "fixtures as are essential to a building's operations" but would not include fixtures, movable machinery, or equipment, which, though essential to applicant's operations as a plant, are not essential to a building's operation as a building.

The county would, for tax purposes, define real property so as to treat machinery, equipment, fixtures, and the land on which a manufacturing establishment is located as an integral real property unit. This is in accord with the view of the State's Supreme Court which made the following statement in sustaining the tax here involved: "It has long been the rule in Pennsylvania that 'Whether fast or loose, therefore, all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold.' . . . Appellant's machinery, being an integrated part of the manufactory, and so, of the freehold, was therefore taxable" under Pennsylvania's definition of real property. This interpretation of Pennsylvania's tax law is of course binding on us. But Pennsylvania's definition of "real property" cannot govern if it conflicts with the scope of that term as used in the federal statute. What meaning Congress intended is a federal question which we must determine.

The 1941 Act does not itself define real property. Nor do the legislative reports or other relevant data provide any single decisive piece of evidence as to congressional intent.[4] Obviously, it could have intended either, as the

---

[4] The 1941 amendments to § 10 added among others the following provision: ". . . such exemptions shall not be construed to be applicable in any State to any buildings which are considered by the laws of such State to be personal property for taxation purposes." The Government contends that this indicates a congressional intent to

Government argues, that content be given to the term "real property" as a matter of federal law, under authoritative decisions of this Court, or, as the county contends, that the meaning of the term should be its meaning under local tax laws so long as those tax laws were not designed to discriminate against the Government.

In support of its contention that a federal definition of real property should be applied, the Government relies on the generally accepted principle that Congress normally intends that its laws shall operate uniformly throughout the nation so that the federal program will remain unimpaired. *Jerome* v. *United States,* 318 U. S. 101, 104; *Commissioner* v. *Tower,* 327 U. S. 280. But Congress, in permitting local taxation of the real property, made it impossible to apply the law with uniform tax consequences in each State and locality. For the several States, and even the localities within them, have diverse methods of assessment, collection, and refunding. Tax rates vary widely. To all of these variable tax consequences, Congress has expressly subjected the "real property" of the Defense Plant Corporation. In view of this express provision, the normal assumption that Congress intends its law to have the same consequences throughout the nation cannot be made. Furthermore, Congress, had it desired complete nationwide uniformity as to tax consequences, could have stipulated for fixed payments in lieu of taxes, as it has done in other statutes.[5] Nor can we see how application of a

establish a uniform meaning of the term "real property" regardless of local rules. But the addition also might be taken to indicate that Congress understood that without it under the language of § 10 the local rule would be followed with respect to taxing buildings. In our opinion the addition of the above-quoted language does not tend to lead to one conclusion or the other.

[5] See, *e. g.,* 42 U. S. C. 1546. See also list of Acts in *Federal Contributions to States and Local Governmental Units with Respect to Federally Owned Real Estate,* House Document No. 216, pp. 39–41.

local rule governing what is "real property" for tax purposes would impair the congressional program for the production of war materials any more than the program would be impaired by the action of Congress in leaving the fixing of rates of taxation to local communities.

We think the congressional purpose can best be accomplished by application of settled state rules as to what constitutes "real property," so long as it is plain, as it is here, that the state rules do not effect a discrimination against the Government, or patently run counter to the terms of the Act. Concepts of real property are deeply rooted in state traditions, customs, habits, and laws. Local tax administration is geared to those concepts. To permit the States to tax, and yet to require them to alter their long-standing practice of assessments and collections, would create the kind of confusion and resultant hampering of local tax machinery which we are certain Congress did not intend. The fact that Congress subjected Defense Plant Corporation's properties to local taxes "to the same extent according to its value as other real property is taxed" indicated an intent to integrate congressional permission to tax with established local tax assessment and collection machinery.

*Affirmed.*

MR. JUSTICE JACKSON took no part in the consideration or decision of this case.