**PORT NECHES INDEPENDENT SCHOOL DIST.**
**v.**
**RECONSTRUCTION FINANCE CORP.**
Civ. A. No. 2303.

United States District Court, E. D. Texas, Beaumont Division.

May 21, 1954.

E. S. Pritchard, Fort Worth, Tex., Quentin Keith, Beaumont, Tex., E. G. Aycock, Fort Worth, Tex., for plaintiff.

B. H. Fly, Dallas, Tex., C. E. Bryson, Houston, Tex., for defendant.

SHEEHY, District Judge.

Plaintiff, an independent school district organized and existing under and by virtue of the laws of the State of Texas, instituted this suit against the defendant Reconstruction Finance Corporation seeking to recover alleged delinquent ad valorem taxes on real property owned by the defendant within the geographical limits of the plaintiff School District, together with penalties and interest. The years for which taxes are alleged to be delinquent are 1951, 1952 and 1953. The total amount of alleged delinquent taxes is a sum in excess of $1,000,000. The alleged penalties and interest sought is an amount in excess of $130,000.

The controversy arises out of plaintiff's attempt to tax a butadiene plant owned by the defendant and operated by the Neches Butane Products Company and two copolymer plants owned by the defendants, one of which is operated by the B. F. Goodrich Company and the other by the U. S. Rubber Company.

For each of the years in controversy herein the plaintiff, acting through its officials, attempted to levy a tax on what

it claimed to be the real property of the defendant located within its district. The defendant has paid to plaintiff a certain sum as taxes for each of the years in controversy, as will be hereinafter pointed out, contending that the amounts paid constitute all the taxes that were due plaintiff on defendant's real property located within the district. Plaintiff seeks to recover in this suit what it claims to be the aggregate amount of taxes that defendant owed it on its real property for the three years in question.

The defendant in answer to plaintiff's suit has interposed many defenses. Included in the defenses interposed is a contention that only real property of the defendant was taxable by plaintiff and that plaintiff included in the property of the defendant assessed and valued for taxation a substantial and indeterminable amount of personal property belonging to defendant, which personal property plaintiff had no right to tax, and because thereof plaintiff's assessment of defendant's property for each of the years in question was void.

Defendant further contends that the levy of taxes made by plaintiff for each of the years in question was invalid; that plaintiff's attempted assessment of taxes against the property contended by defendant to be exempt was invalid because such property was not rendered and identified as required by the applicable laws of the State of Texas; and that the valuation fixed by plaintiff for defendant's property for each of the years in question was illegal, arbitrary and discriminatory and resulted in damage to defendant. There are other contentions made by defendant which are not necessary to here mention. The defendant by cross-action seeks a permanent injunction enjoining plaintiff from making any further attempts to collect from defendant taxes for each of the years in question.

A lengthy trial was had before a jury. Pursuant to the provisions of Rule 49(a), F.R.C.P., 28 U.S.C.A., the material questions of fact raised by the pleadings and evidence were submitted to the jury in the form of written questions and the jury in answer to the questions submitted found as follows:

(1) That the fair cash market value of the defendant's real property situated within plaintiff School District on January 1, 1951 was $54,600,000; on January 1, 1952 was $53,400,000; and on January 1, 1953 was $47,600,000;

(2) That the fair cash market value of defendant's land located within plaintiff's District and the buildings located thereon was on January 1, 1951 the sum of $39,600,000; on January 1, 1952 the sum of $38,140,000; and on January 1, 1953 the sum of $32,880,000;

(3) That the defendant in its inventory for taxation to plaintiff District for each of the years in question deducted from its property rendered for taxation all stills, towers, boilers, machinery and other processing equipment;

(4) That in the assessment of the defendant's property made by the Tax Assessor of plaintiff School District for each of the years in question the Tax Assessor included a substantial and indeterminable amount of personal property belonging to Defendant;

(5) That for each of the years in question plaintiff's Board of Equalization included in the property of the defendant valued for taxation a substantial and indeterminable amount of personal property belonging to Defendant;

(6) That the Tax Assessor of plaintiff District in assessing the taxes on defendant's property for each of the years in question was not acting under the control of the Board of Trustees of plaintiff District;

(7) That the Board of Equalization of plaintiff District in assessing taxes on defendant's property for each of the years in question was not acting under the control of the Board of Trustees of plaintiff District;

(8) That the Tax Assessor of plaintiff District did not know at the time the defendant filed its inventory of prop-

erty with the Tax Assessor for each of the years in question that defendant was claiming that all of its property which could be removed from the rubber plant, or plants, was exempt from taxation as personal property;

(9) That the Board of Equalization of plaintiff District in fixing the valuation of defendant's property for each of the years in question did not include items of property which such board knew the defendant claimed was exempt from taxation;

(10) That the Board of Equalization of plaintiff District for each of the years in question followed a plan to fix the value of defendant's property for taxable purposes so as to produce revenues to meet the school budget for the year regardless of the fair cash market value of defendant's property;

(11) That plaintiff's Board of Equalization for neither of the years in question fixed the assessed value of defendant's real property at a substantially geater percentage of the fair cash market value of such property than such board fixed the assessed value of other comparable property within plaintiff District.

The plaintiff has timely filed a motion for judgment on the verdict and, in the alternative and in the event its motion for judgment should be denied, it asks the Court to restrict any judgment entered for the defendant to what it calls a "simple judgment" for defendant without prejudice to the rights of plaintiff to proceed under the authority of Article 7346, et seq., Revised Civil Statutes of Texas, and as may otherwise be authorized by law, to reassess the real properties of defendant for taxation for each of the years in question. The defendant has timely filed a motion requesting the Court to set aside the verdict of the jury and to enter judgment in accordance with defendant's motion for directed verdict made at the close of all of the evidence or, in the alternative, that judgment be entered for the defendant on and in accordance with the verdict of the jury.

It would serve no useful purpose to here deal in a lengthy discussion of the evidence pertinent to the findings of the jury, above set out, and the sufficiency of the evidence to support such findings. It will suffice to say that each of the findings of the jury, with the exception of Findings Nos. 10 and 11 above, is amply supported by the evidence. There may be a question as to whether the jury's Findings Nos. 10 and 11, and particularly Finding No. 11, are supported by the evidence but in view of the disposition that is to be made of this case and the grounds therefor, Findings Nos. 10 and 11 are deemed immaterial and, therefore, a determination as to the question of the sufficiency of the evidence to support said findings, or either of them, is unnecessary.

At the close of all the evidence the defendant filed and presented a motion for an instructed verdict, which motion was refused. One of the grounds of the motion was to the effect that there had been no valid levy of taxes by plaintiff District for either of the years in question because the attempted levy was by verbal motion made by one of the members of the Board of Trustees and not by a written order or ordinance duly presented to and passed by the Board of Trustees. The remaining grounds of the motion, in the main, concerned factual matters that were submitted to the jury and, therefore, will be here given no further consideration.

The only evidence as to a levy of taxes by the plaintiff for the years in question were excerpts from the minutes of meetings of the Board of Trustees of plaintiff District. The purported levy of taxes for 1951 is shown by the following excerpt from the minutes of the October 16, 1951 meeting of the Board of Trustees of plaintiff District which is as follows:

"A motion was made by Mr. Scott that the school tax rate be set at $1.05 for local maintenance and $.40 for debt service for the coming year in accordance with the superintendent's recommenda-

tion. The motion was seconded by Mr. McInnis and passed unanimously."

The purported levy for 1952 and the purported levy for 1953 were each made in a similar fashion, i. e., by oral motion of one of the members of the School Board, which motion was passed unanimously in each instance. The actions of the School Board with respect to said purported levy for each of the years in question was made a part of the official minutes of the meetings of the Board of Trustees of plaintiff District. Defendant contends that under the law of Texas the Board of Trustees of an independent school district cannot levy an ad valorem tax by a mere verbal motion made, adopted and entered on the minutes by the Board but that in order for the levy to be a valid one it must be reduced to writing before being acted on by the Board and must be invested substantially with the formalities, solemnities and characteristics of an ordinance as distinguished from motions and simple resolutions. There are some decisions of the Courts of Civil Appeals of Texas that tend to support defendant's contention in this respect.[1]

■ However, the Supreme Court of Texas by its approval of the holdings of the Texas Commission of Appeals in Yorktown Independent School Dist. v. Afflerbach, 12 S.W.2d 130 has apparently held to the contrary. In the last mentioned case the appellee was contending that there had been no valid levy of a tax by the Yorktown Independent School District for the year 1921. The facts showed that the levy was made by an oral motion made and carried by the Board of Trustees of the Yorktown Independent School District similar to the motions in the instant case. The Commission of Appeals, without elaborating on the reasons why or citing any authority, held that there was a proper levy for the year 1921. On the authority of the holding in that case it is believed that there was a proper levy of the ad valorem tax by plaintiff School District for each of the years in question.

■ There is an added reason why the levy of the tax by plaintiff District for the years 1951 and 1952, respectively, is valid. In 1953 the Legislature of Texas passed a validating act, Article 2815g–47, Revised Civil Statutes of Texas, Vernon's Ann.Civ.St., effective February 23, 1953, validating among other actions or acts of the Board of Trustees of School Districts in the State of Texas, including independent school districts, levying, attempting or purporting to levy taxes for and on behalf of such school districts. The courts of Texas have held such validating acts to be constitutional and valid.[2]

Having reached the conclusion on the validity of the levy of the ad valorem tax by plaintiff District for each of the years in question, above indicated, I am still of the opinion that defendant was not entitled to an instructed verdict at the close of all the evidence.

We now pass to a consideration of the judgment that should be entered on the Findings of Fact made by the jury.

There is no question but that under the law of Texas plaintiff has a right to levy and collect ad valorem taxes on the taxable property located within its bounds that is subject to taxation for the purpose of maintaining and operating its public school system.

■ Since defendant is an agency of the United States Government, its property, both real and personal, located within plaintiff District would not be subject to taxation by plaintiff in the absence of consent on the part of the Government for such property to be taxed. The Congress has given consent for the local taxation of the property of

1. Gerhardt v. Yorktown Independent School Dist., Tex.Civ.App., 252 S.W. 197; St. Louis Southwestern Ry. Co. of Texas v. Naples Independent School Dist., Tex.Civ.App., 30 S.W.2d 703; Flower Grove Independent School Dist. v. Koger, Tex.Civ.App., 77 S.W.2d 602.

2. Cook v. City of Booker, Tex.Civ.App., 167 S.W.2d 232; Morris v. City of Con-

Reconstruction Finance Corporation to a limited extent. Title 15 U.S.C.A. § 607 after providing that the Reconstruction Finance Corporation shall be exempt from all taxation by any State, County, municipality or local taxing authority further provides "* * * except that any real property of the Corporation shall be subject to special assessments for local improvements and shall be subject to State, Territorial, county, municipal, or local taxation *to the same extent according to its value as other real property is taxed.*" (Emphasis supplied.) Under this statute the plaintiff could tax only the real property of the defendant and could not tax the personal property of defendant and any attempt on the part of plaintiff to tax the personal property of the defendant would be unlawful. The Supreme Court of the United States in construing this statute held that in determining what constitutes real property within the meaning of the statute the settled rules of the state in which the property is located will be applied so long as the state rules do not effect a discrimination against the Government or patently run counter to the terms of the statute.[3] The Supreme Court in the Beaver County case further held that Congress by subjecting Reconstruction Finance Corporation properties to local taxes to the extent that such properties are subjected to local taxes by the statute, above referred to, indicated an intent to integrate Congressional permission to tax with established local tax assessment and collection machinery.

Under the Constitution of Texas all property must be taxed in proportion to its value and no property can be assessed for taxation at a greater value than its fair cash market value.[4]

Two of the most controverted fact issues in this case were: (1) What property of defendant located within plaintiff District constituted real property as distinguished from personal property; and (2) What was the fair cash market value of defendant's real property on January 1st of each of the years in controversy herein?

The defendant took the position, generally, that of its property located within plaintiff District only the land and the buildings located thereon were real property and that the remainder of its property, including numerous stills, towers, boilers, machinery and other processing equipment, was personal property. On the other hand, the plaintiff contended, generally, that all of defendant's property located within plaintiff District, with the exception of stocks on hand, office furniture, tools and automotive equipment, was real property.

For each of the years in question the defendant rendered property to plaintiff for assessment of taxes. The taxable value of the property rendered by defendant was fixed by defendant for each of the three years in question at $12,700,000. The defendant purported to render only real property for taxation and the property rendered was described on the rendition sheet by describing the land of the defendant and by stating further, in effect, that said rendition included all taxable property of every kind and description located on the tracts of land described in the rendition sheet. The description of the property rendered was virtually the same on the rendition sheet submitted by the defendant for each of the years. For the year 1951 plaintiff's Tax Assessor placed an assessed valuation of $21,859,200 on defendant's property, which assessed valuation was approved by plaintiff's Board of Equalization. For the year 1952 plaintiff's Tax Assessor assessed defendant's property at an assessed valuation of $23,607,930, which assessed valuation was approved by plaintiff's Board of Equalization. For

---

roe, Tex.Civ.App., 47 S.W.2d 690, Writ of Error Refused.

3. R. F. C. v. Beaver County, 328 U S. 204, 66 S.Ct. 992, 90 L.Ed. 1172.

4. Sections 1–a and 20, Art. 8, Texas Vernon's Ann.St. Constitution.

the year 1953 plaintiff's Tax Assessor assessed defendant's property at a taxable valuation of $28,587,110, which assessed valuation was approved by plaintiff's Board of Equalization. The undisputed evidence shows that plaintiff's Tax Assessor and its Board of Equalization for the year 1953 fixed the taxable valuation of all property in plaintiff District assessed for taxes at 30% of the fair cash market value of said property. Although the evidence is not too clear as to the percentage of the fair cash market value of the property in plaintiff District assessed for taxes for the years 1951 and 1952 that was used by plaintiff's Tax Assessor and its Board of Equalization in fixing the taxable valuation to be placed on the property assessed for taxes for the years 1951 and 1952, the undisputed evidence does show that for neither 1952 nor 1951 was a percentage in excess of 30% used. In other words, the tax authorities of plaintiff District did not purport to assess the property assessed for taxes in its district at a tax valuation which would be in excess of 30% of the fair cash market value of the property assessed for taxation. In view of that fact and the fact that plaintiff's Tax Assessor and its Board of Equalization fixed the taxable valuation of defendant's property that it assessed for the year 1953 at the sum of $28,587,110, it necessarily follows that both the Tax Assessor and the Board of Equalization fixed the fair cash market value of defendant's property it assessed for taxation in 1953 at approximately $90,000,000. The fair cash market value of defendant's property assessed for taxation by plaintiff's tax authorities for the years 1951 and 1952, as found by plaintiff's tax authorities, would be higher than the assessed taxable valuation of such property for those years in almost the same proportion that the fair cash market value of defendant's property assessed for taxation for the year 1953 was higher than the taxable valuation fixed on said property for the year 1953.

■■ It is now the settled law in Texas that the assessment of property for tax purposes is a quasi-judicial function of boards of equalization and that no attack on valuations fixed by such boards can or will be sustained in the absence of proof of fraud, want of jurisdiction, illegality, or the adoption of a fundamentally wrong or unlawful plan or method of valuation.[5] When the attack is made because of the adoption of a fundamentally wrong or unlawful plan or method, the tax payer to prevail must not only show that the plan or method used was fundamentally wrong and illegal but must further show that the use of the plan worked to his substantial injury.[6]

■ When the findings of the jury enumerated as Findings Nos. 1, 2, 4 and 5 above are considered, together with the fair cash market value and the taxable value of defendant's property assessed for taxation as determined by plaintiff's Board of Equalization for each of the years in controversy, it is obvious that plaintiff's assessor of taxes and its Board of Equalization in fixing the taxable value of defendant's property that it assessed for taxation included in the property of defendant evaluated a substantial amount of defendant's personal property. This it had no right to do, even though the personal property of defendant might have been included in the property assessed and evaluated for taxation because of a mistaken belief as to what property of defendant constituted real property as distinguished from personal property, as defendant's personal property was not subject to taxation by plaintiff. This including of a substantial amount of defendant's personal property in defendant's property assessed and valued for taxation was, in effect, the adoption on the part of plaintiff's tax officials of a

5. State v. Whittenburg, Tex.Sup., 265 S. W.2d 569.

6. State v. Whittenburg, supra; Druesdow v. Baker, Tex.Com.App., 229 S.W. 493; Rowland v. City of Tyler, Tex.Com. App., 5 S.W.2d 756, 757.

fundamentally wrong and unlawful plan or method of evaluating defendant's property for taxation. The substantial injury suffered by defendant because of the following of such fundamentally wrong and unlawful plan or method is patent. In the first place, under such a plan or method the defendant would be compelled to pay taxes in a substantial sum on property, namely personal property, which under the law was not taxable by plaintiff. In the second place, defendant would be required to pay taxes on what purported to be its real property based on a tax valuation of its purported real property which was almost double 30% of the fair cash market value of its real property. Because plaintiff's tax officials followed and used this fundamentally wrong and unlawful plan or method of evaluating defendant's property for taxation for each of the years in question the assessment made of defendant's property for each of the years in question by plaintiff's tax officials is void and must be set aside.

The findings of the jury (Findings Nos. 4 and 5 above) to the effect that for each of the years in question plaintiff's tax officials assessed and valued for taxation a substantial and indeterminable amount of personal property belonging to the defendant present another reason why the assessment by plaintiff of defendant's property for taxation for each of the years in question is void and must be set aside. The plaintiff concedes that defendant's personal property was exempt from taxation by plaintiff and plaintiff had no lawful right to tax or attempt to tax such personal property. Therefore, any assessment by plaintiff of defendant's personal property for taxation would be void.[7] The courts of Texas recognize that where a tax has been levied for a purpose, part of which is legal and part illegal, the lawful part will be sustained if it can be clearly and definitely ascertained and separated from the unlawful part.[8] It is also the law in Texas that when a tax has been levied for a purpose, part of which is legal and part illegal, the whole levy will be held invalid unless the lawful part can be clearly and definitely ascertained and separated from the unlawful part.[9] These rules as to a tax levy would be just as applicable to an assessment for taxation by taxing authorities of property, part of which was subject to taxation and part of which was exempt. If in the instant case the Court could separate in plaintiff's assessment of defendant's taxes for each of the years in question defendant's real property and the taxable valuation placed thereon by plaintiff's tax authorities from defendant's personal property assessed and valued by plaintiff for taxation, it would be the Court's duty to do so. In view of the evidence in this case, it is impossible for the Court to do so.

As above indicated, the defendant prayed for a permanent injunction enjoining plaintiff from attempting to collect any further taxes from it for each of the years in question. The parties have stipulated that for each of the years in question the defendant has heretofore paid to plaintiff as taxes on its property in plaintiff's District an amount that would be due on a taxable valuation of defendant's properties of $17,000,000. The amounts so paid by the defendant are as follows: for 1951 the sum of $246,500; for the year 1952 the sum of $255,000; and for the year 1953 the sum of $255,000. These sums were paid by defendant and accepted by plaintiff with the understanding that the payments were made in order to relieve a financial hardship being suffered by the plaintiff and without waiver of defendant's right to contest the validity of any taxes levied or attempted to be levied by plaintiff and its right to con-

7. 51 Am.Jur. 504.

8. Dallas County Levee Improvement Dist. v. Hengy, 146 Tex. 95, 202 S.W.2d 918;

Nalle v. City of Austin, 91 Tex. 424, 44 S. W. 66.

9. Dallas County Levee Improvement Dist. v. Hengy, supra.

test any valuation placed upon defendant's property by plaintiff. Defendant now contends that in view of the findings of the jury, the injunction prayed for should be granted and assigns two grounds as the basis for such contention. The first ground is a contention to the effect that since the undisputed evidence shows that the plaintiff for neither of the years in question assessed the property in its district assessed for taxation at an assessed value in excess of 30% of the fair cash market value of said property, the plaintiff could not reassess defendant's real property for the years in question at a greater taxable valuation than 30% of the fair cash market value of defendant's real property as found by the jury. In this connection it is pointed out that for none of the years in question would 30% of the fair cash market value of defendant's real property, as found by the jury, amount to as much as $17,000,000, the taxable valuation on which defendant has heretofore paid taxes to plaintiff for each of the years in question. The second ground is the contention that under the law of Texas where a tax payer has rendered his property for taxation and the Board of Equalization acted illegally in increasing the valuation from the valuation rendered by the tax payer, the tax payer is liable only for taxes based on the valuation as rendered by him when the assessment made by the board of equalization is held invalid by a court and set aside. In support of this last contention defendant cites and relies on State v. Richardson, 126 Tex. 11, 84 S.W.2d 1076. It is true that the Supreme Court of Texas in that case held, in effect, that if a tax payer renders his property for taxation and the board of equalization fixes a value that is illegal and the value as fixed by the board of equalization is afterwards set aside, the tax payer's original rendition prevails as a basis upon which taxes are to be paid. That case as is the instant case was a suit by the taxing authority to recover delinquent taxes and

as in the instant case the tax payer in the Richardson case had rendered his property for taxation at a certain value, which value was increased by the Board of Equalization and which increase was held by the court to be illegal and invalid. If this holding in the Richardson case were still the law in Texas, the defendant would be entitled to the injunction prayed for. However, the Supreme Court of Texas in Electra Independent School District v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645, 652 overruled the holding in the Richardson case, above referred to. The Court stated:

"The Richardson case, like the present, was a suit for taxes and not a suit for an injunction to restrain the collection of illegal taxes. Hence the rule was improperly applied in the Richardson case. * * Many of the assessments attempted to be made in this case are invalid. In order for the school district to be entitled to collect taxes there must be a valid assessment. The statutes provide the procedure to be employed. If the value fixed by the property owner in his rendition is to prevail as a basis upon which taxes are to be paid then there would be no necessity for reassessment as provided by the statutes and the Board of Equalization would be deprived of its statutory duty of 'equalizing taxes.' "

The last case mentioned was also a suit by the taxing authority to collect delinquent taxes and that case as in the instant case the tax payer had rendered property at a certain valuation, which valuation was increased by the Board of Equalization and which increase by the Board of Equalization was held to be unlawful and was set aside.

As to the first reason assigned by defendant in support of its request for injunction, the Supreme Court of Texas has established as the settled law of Texas that a court in a suit for taxes has no authority or power to revalue and

reassess property for taxation where the assessment is found to be invalid.[10]

From what has been said it follows that this Court has no authority to grant the injunction prayed for by defendant.

For the reasons, above stated, plaintiff's motion for judgment on the verdict will be denied; defendant's motion for judgment notwithstanding the verdict will be denied; defendant's request for injunction will be denied; and defendant's motion for judgment on the verdict will be granted and judgment will be entered herein to the effect that plaintiff take nothing from the defendant, that the assessment of defendant's property by the plaintiff for each of the years in question be set aside and that the judgment entered will be without prejudice to plaintiff's right to reassess defendant's real property located within its district for each of the years in question in accordance with the applicable laws of the State of Texas.

The costs herein will be adjudged against the plaintiff. In taxing the costs against the plaintiff I am aware of the provisions of Articles 7343 and 7297, Revised Civil Statutes of Texas, and the interpretation of those statutes as made by the Supreme Court of Texas [11] to the effect that costs may not be adjudged against a taxing authority in a suit for the collection of delinquent taxes. Those statutes would apply only to proceedings in the courts of Texas and would have no application in this proceeding in this court. I have been cited to no Federal statute or rule of Federal procedure and I know of none that would exempt plaintiff from the payment of costs in a suit of this nature in the Federal court.

---

10. State v. Richardson, supra; and Electra Independent School District v. W. T. Waggoner Estate, supra; (The Supreme Court in the Waggoner case did not overrule the holding of the court in the Richardson case on this point but on the contrary specifically approved and reaffirmed the holding in the Richardson case on this point.)

11. Electra Independent School District v. W. T. Waggoner Estate, supra; and Grant v. Ellis, Tex.Com.App., 50 S.W.2d 1093.