**UNITED STATES of America, Appellant,**

v.

**Floy MAYS, as Treasurer of Kiowa County, Colorado; and Board of County Commissioners of Kiowa County, Colorado, Appellees.**

**No. 5979.**

United States Court of Appeals
Tenth Circuit.

March 5, 1959.

Peter H. Schiff, Atty., Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Donald E. Kelley, U. S. Atty., Denver, Colo., and Alan S.

Rosenthal, Atty., Dept. of Justice, Washington, D. C., were with him on the brief), for appellant.

John B. Barnard, Jr., First Asst. Atty. Gen., State of Colorado, and Carl M. Shinn, Dist. Atty., 15th Judicial Dist. of Colorado, Lamar, Colo. (Duke W. Dunbar, Atty. Gen., Frank E. Hickey, Deputy Atty. Gen., State of Colorado; John J. Lefferdink, Deputy Dist. Atty. 15th Judicial Dist. of Colorado, and Edward C. Hastings, County Atty., Eads, Colo., were with them on the brief), for appellees.

Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.

### BRATTON, Chief Judge.

The appeal in this case presents for determination a contest for priority of liens. The contestants are the United States and Kiowa County, Colorado; and the property covered by the respective liens is certain farm storage facilities. In the exercise of authority vested in it by section 4(h) of the Commodity Credit Corporation Charter Act, as amended, 15 U.S.C.A. § 714b(h), Commodity Credit Corporation, an agency and instrumentality of the United States, sometimes hereinafter referred to as Commodity, furnished funds in the form of loans to grain growers in Kiowa County, Colorado, sometimes hereinafter referred to as the County, to grain growers in other counties in Colorado, and to grain growers in other states, to be used in the acquisition of structures in which to store grain. The loans to the grain growers in Kiowa County involved in this action were made, notes therefor were given, chattel mortgages securing the loans were executed and delivered, and the chattel mortgages were duly filed and recorded in accordance with the law of Colorado prior to March 1, 1954; and, excluding a few loans that were repaid, such chattel mortgages were kept in force and effect ever since or new ones to secure the same indebtedness were executed, recorded, and kept in effect. All of the chattel mortgages referred to contained provisions in which the mortgagor covenanted and agreed to pay promptly all taxes assessed against or attaching to the mortgaged property. The structures contemplated at the time of the making of the loans and later acquired were prefabricated metal buildings, designed to be and actually erected on and bolted to concrete slabs, with the view that in case of non-payment of the debt, the structure could be dismantled and re-erected elsewhere. At the time the respective loans were made and secured, and as parts of the same transaction, in each instance, the mortgagor and the mortgagee executed a written instrument by the terms of which the parties covenanted and agreed that the property described in the mortgage should remain severed from the real estate; that even if attached to the realty, it should retain its personal character, should be removable from the real estate, should be treated as personal property with respect to the rights of the parties, and should not become fixtures or a part of the real estate; and that it should not be subject to the lien of any other security transaction or instrument theretofore or thereafter arising against the structure or realty on which it was placed until the expiration of Commodity's lien and any extension or renewal thereof, and until repayment of the loan. The agreements were filed of record in the office of the County Clerk and Recorder of the county in which the mortgaged property was situated.

In certain specified instances, subsequent to the recordation of the chattel mortgages and agreements, each structure was assessed in the name of its owner for general state, county, and school district ad valorem property taxes for the years 1954 and 1955 as land (improvements only); taxes for those years were levied by the officials of the County; the taxes were not paid; and they became delinquent. The Treasurer of the County sold the properties for delinquent taxes in accordance with the procedure set forth in the statutes of Colorado. The properties were purport-

edly sold free and clear of the security interest held by the United States under the chattel mortgages and agreements. No bids were submitted and the properties were struck off to the County. Certificates of purchase were issued to the County and threats were made that they would be sold to any person desiring to purchase them on terms prescribed by the laws of the state. Other like properties covered by like chattel mortgages and agreements were assessed for the years 1956 and 1957; taxes were levied thereon; and the County declared its purpose to assess all properties of like character and to levy in similar manner ad valorem taxes thereon for succeeding years.

The United States instituted this action against the Treasurer and the Board of County Commissioners of the County, and the primary relief sought was an adjudication with appropriate restraining provisions that Commodity's mortgage liens upon the storage facilities were entitled to priority over the tax liens of the County. The court sustained the contention of the County that Commodity's mortgage liens were subordinate to the County's tax liens. Judgment was entered dismissing the action, and the United States appealed.

■■ The security interests of Commodity in the storage facilities consisting of pre-fabricated metal buildings were created by instruments denominated chattel mortgages. And in their contractual relations, the mortgagors and the mortgagee treated the buildings as personal property, separate and apart from the real estate on which they were located. But the denomination given to the mortgages and the agreement of the parties were ineffective in respect to fixing the status of the buildings as to being personal property or part of the real estate on which they were located for the purposes of ad valorem taxation under state law. The buildings were located on lands belonging to the mortgagors for the purpose of storing therein grain produced by the mortgagors. They were erected on and bolted to concrete slabs in a manner which lent itself readily to their dismantlement and re-erection elsewhere. The Commodity Credit Corporation Charter Act, supra, does not undertake to catalogue or classify storage facilities of that kind as to being personal or real property in respect to liability for ad valorem taxes under state law or immune therefrom. And there being no Congressional provision making the classification for such purpose, in the absence of objectionable discrimination against the security interest of Commodity, the question whether the buildings constituted personal property for purposes of local taxation under the state law or constituted integrated elements of integral real property units for such purpose must be determined by the law of Colorado. Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172.

The parties stipulated in writing in the trial court that for the purposes of the action only, and except for any superior or prior rights or interests of the United States, if any, the structures were subject to taxation as real estate improvements as defined in section 137-1-12, Colorado Revised Statutes 1953. And the able trial court concluded as a matter of law that under such statute, the structures, as well as any interests therein, were subject to ad valorem taxation for state, county, or local purposes, as real property, and not otherwise. It seems too clear for doubt that if the mortgages had been given to individuals or private corporations rather than an agency and instrumentality of the United States, the structures would under the law of Colorado be subject to ad valorem tax as integrated elements of integral real property units, not as personal property, separate and apart from the real estate on which they were located. Mollie Gibson Consolidated Mining & Milling Co. v. McNichols, 51 Colo. 54, 116 P. 1041. And in such circumstances, the tax lien would be prior in rank to the mortgage liens, even though the mortgages were duly filed and of record at the time of the levying of the tax.

■■ Of course, unless the immunity is effectively waived, the properties, functions, and instrumentalities of the United States are immune from taxation under state law. That doctrine, now so well established that it is treated as axiomatic, was first enunciated in McCulloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579, and it has been consistently followed without deviation. But Congress is vested with unquestioned power effectively to waive the immunity and consent to the imposition of tax under state law upon specified properties, specified functions, or specified instrumentalities of the United States. Reconstruction Finance Corp. v. Beaver County, supra.

■ In presently pertinent part, section 5 of the Act approved March 8, 1938, 52 Stat. 108, 15 U.S.C.A. § 713a–5, provides in effect that Commodity, its franchise, reserves, surplus, and income shall be exempt from all taxation imposed by any state, county, or local taxing authority, "except that any real property of the Commodity Credit Corporation shall be subject to State, * * * county, * * * or local taxation to the same extent according to its value as other real property is taxed." The United States urges the contention that the exception contained in the statute has no bearing here for the reason that it is expressly limited to permitting states and their subdivisions to tax real property of Commodity; that the storage facilities upon which the County undertook to levy the tax were owned by the mortgagors of such facilities; and that therefore the exception is without any application here. Section 10 [1] of the Reconstruction Finance Corporation Act, 15 U.S.C.A. § 607, contains an identical provision with respect to consenting to

the taxing of real property belonging to the Reconstruction Finance Corporation; and it was considered in Reconstruction Finance Corp. v. Beaver County, supra. That case involved the power of Beaver County, Pennsylvania, to levy ad valorem taxes on certain portable machinery owned by a subsidiary of Reconstruction Finance Corporation. The machinery was located in a plant owned by the subsidiary and leased to a contractor for use in carrying out its contracts with the Government. The law of the state made the machinery part of the realty for tax purposes. But the United States contended that in the enactment of the exception contained in the statute, Congress did not intend that the waiver of immunity from taxation under state law on real property should extend to portable machinery of that kind which was never meant to be a permanent accession to the building in which it was placed. In rejecting the contention, the court held in effect that since under the law of the state the machinery was an integrated part of an integral real property unit, it fell within the exception contained in the statute and therefore its immunity from taxation under state law was waived. In like manner, since under the law of Colorado the storage facilities constituted an integrated part of an integral unit of real estate for tax purposes, their immunity from taxation under state law was effectively waived and Congressional consent to their taxation was effectively given by the exception contained in the statute, supra; and the tax lien held priority in rank over the security interest of Commodity, even though the mortgages were filed and of record prior to the levying of the tax.

The judgment is

Affirmed.

1. Now section 8.