**FEDERAL LAND BANK OF WICHITA,**
**Plaintiff-Appellant,**

**v.**

**The BOARD OF COUNTY COMMIS-**
**SIONERS OF the COUNTY OF**
**ADAMS, et al., Defendants-Appellees.**

**No. 85–1752.**

United States Court of Appeals,
Tenth Circuit.

April 21, 1986.

Michael J. Sternick (Robert F. Wilson of Pendleton & Sabian, with him on brief), Denver, Colo., for plaintiff-appellant.

S. Morris Lubow, Denver, Colo., for defendants-appellees.

Before BARRETT, LOGAN, and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

The Federal Land Bank of Wichita has appealed a district court judgment upholding the State of Colorado's system of taxation of oil and gas interests as applied to such properties owned by the Land Bank.

The Land Bank is a federally chartered instrumentality of the United States which makes long-term loans to farmers secured by real estate mortgages. 12 U.S.C. §§ 2001–2055. The Land Bank owns a portfolio of mineral interests in Colorado, including oil and gas interests, which it reserved when selling land acquired through foreclosures.

■ Producing oil and gas interests are taxed in Colorado by applying the county's ad valorem tax rate to a value calculated by multiplying actual production from the tract during the preceding year by a statutory percentage of actual selling prices. Colo.Rev.Stat. §§ 39–7–101 to 39–7–108 (1982). Nonproducing interests are taxed by applying the ad valorem tax rate to assessed values of the minerals, with (until a legislative change effective in 1986) a minimum $1.00 per acre valuation. *Id.* § 39–1–104(4), 39–7–109 (1982 & 1985 Supp.). The Land Bank sought a declaratory judgment in federal district court that this system of taxation is unlawful as applied to its oil and gas interests. The district court granted summary judgment to the defendant Colorado counties. *Federal Land Bank v. Board of County Commissioners*, 607 F.Supp. 1137 (D.Colo.1985). We agree with the well-reasoned opinion of the district court and affirm.

■ A state cannot tax a federal instrumentality absent permissive federal legislation. *First Agricultural National Bank v. State Tax Commission*, 392 U.S. 339, 340, 88 S.Ct. 2173, 2174, 20 L.Ed.2d 1138 (1968). Taxation of all federal land banks is governed by 12 U.S.C. § 2055, which provides:

"Every Federal land bank ... shall be exempt from Federal, State, municipal, and local taxation, except taxes on real estate held by a Federal land bank or a Federal land bank association to the same extent, according to its value, as other similar property held by other persons is taxed."

The Land Bank argues that the Colorado scheme for taxing oil and gas interests does not tax "real estate" and it does not tax "according to its value."

■ Section 2055 does not define "real estate." The general rule is that property rights are created and defined by state law, *see Kenfield v. United States*, 783 F.2d 966, 968 (10th Cir.1986), and whether a property interest is to be classified as realty or personalty repeatedly has been held to be a question of state law. *Reconstruction Finance Corp. v. Beaver County*, 328 U.S. 204, 209–10, 66 S.Ct. 992, 995–96, 90 L.Ed. 1172 (1946); *Waggoner v. Wichita County*, 273 U.S. 113, 117, 47 S.Ct. 271,

273, 71 L.Ed. 566 (1927); *United States v. Mays*, 264 F.2d 317, 320 (10th Cir.1959). A state law classification that defies reason or manipulates legal labels with a discriminatory intent to avoid federal immunity from tax can, of course, be questioned. *City of Detroit v. Murry Corp.*, 355 U.S. 489, 492, 78 S.Ct. 458, 460, 2 L.Ed.2d 441 (1958); *Reconstruction Finance Corp.*, 328 U.S. at 210, 66 S.Ct. at 995–96.

A Colorado statute provides that "minerals in and under the land, and all rights and privileges thereunto pertaining" are realty for assessment and tax purposes. Colo. Rev.Stat. § 39–1–102(14)(b) (1982). Although the Land Bank asserts that its holdings are only royalty interests that entitle it to a specific fraction of production free of costs, and thus are less than the mineral fee, we construe Colorado law as classifying such holdings as realty. The Colorado statute treats both the lessee's and lessor's interest in minerals as realty. *See id.* § 39–7–102(1). That classification surely would apply to overriding royalty or other similar interests. *See Carpenter v. Shaw*, 280 U.S. 363, 368, 50 S.Ct. 121, 123, 74 L.Ed. 478 (1930) (Oklahoma mineral royalty interest held to be real estate; tax on such interests violates Indian treaty providing that "lands" shall not be taxed); *Waggoner v. Wichita County*, 273 U.S. at 117–18, 47 S.Ct. at 273–74 (Texas may classify lessor's reserved royalty as realty). Although a state classification of the royalty interests as personalty would have been reasonable, *cf. Federal Land Bank v. Board of County Commissioners*, 368 U.S. 146, 147–48, 156, 82 S.Ct. 282, 284–85, 288, 7 L.Ed.2d 199 (1961) (Kansas tax may not be levied on Land Bank oil and gas interests because Kansas statute treats oil and gas interests as personalty), we do not think the Colorado classification as real estate is unreasonable or violates 12 U.S.C. § 2055.

■ The Land Bank contests the Colorado assessment method, which values producing mineral interests by the past year's production. It argues that this must be viewed as creating a severance or excise tax on minerals. Severed minerals general-

ly are considered personal property. *See, e.g., London Extension Mining Co. v. Ellis*, 134 F.2d 405, 410 (10th Cir.1943). Colorado, however, has a separate severance tax. Colo.Rev.Stat. §§ 39–29–101 to 39–29–115 (1982 & 1985 Supp.). Past production is used in the Colorado ad valorem tax system only as a gauge for the valuation of the mineral interests. Use of this admittedly imperfect gauge does not rule out the conclusion that the mineral interest itself is being taxed. The amount of the tax is determined by applying the same ad valorem tax rate applied to other real estate to this value. The basis is not current production but production from the prior year. If the mineral interest or estate stops producing, it does not escape the Colorado "real estate" tax; the interest is taxed according to an appraised value. *Id.* § 39–1–104(4). We accept Colorado's declaration that this is a tax on real estate.

■ The Land Bank asserts that there are two other requirements of 12 U.S.C. § 2055: that the property be taxed (1) according to its value, and (2) as similar property held by other persons is taxed. It asserts that the Colorado assessment method does not tax a mineral interest "according to its value." We think the Land Bank parses the statutory language too finely, putting too much emphasis on valuation. We believe Congress was concerned primarily with preventing discriminatory taxation of the agency's real estate, i.e., that it be valued and taxed in the same manner as other owners' realty is taxed. There is no discrimination in the instant case. The Land Bank's property is valued exactly like that of other mineral interest owners and taxed at the same rate.

We see no magic in any one system of valuation. Even the most careful appraisals of recoverable subsurface minerals would be quite inexact. Mathematical accuracy in such appraisals is impossible. As Samuel Butler noted in *Hudibras*, "the value of a thing is just exactly what 'twill bring." When dealing with oil and gas in the ground there is always uncertainty as to how much can be extracted, and its

value can best be determined only when it is sold, as recent oil and gas price movements dramatically demonstrate. Colorado's decision to use past production as a gauge of value is understandable; it provides relatively uncontested figures for a relatively simple calculation. We do not find the method that Colorado selected for producing interests to be unlawfully unrelated to the "value" required under § 2055.

■ The Land Bank complains of the $1.00 per acre minimum valuation for non-producing interests, which existed under the statute at the time this case was tried. If this had been other than a token minimum, we might agree. *Cf. St. Louis County v. Federal Land Bank,* 338 N.W.2d 741, 745 (1983) (flat per-acre tax on mineral interests invalid under § 2055 as wholly unrelated to "value"). The token valuation of one dollar, however—which produces not one dollar of tax but a figure to which the county's ad valorem rate is applied—seems a fair way of saying that these properties, which cannot be valued accurately, but which the owners have considered worth the trouble of separate title, will be carried on the tax rolls at a nominal figure requiring payment of some nominal amount of annual taxes. There is no evidence of manipulation or discrimination between taxpayers in the Colorado taxation system. Colorado simply has chosen what seems to be a workable valuation method.

■ The Colorado Constitution requires that "valuation for assessment for ... lands or leaseholds producing oil or gas ... shall be a portion of the actual annual or actual average annual production therefrom." Colo. Const. art. X, § 3(1)(b). If we were to hold that Colorado's method of valuation is improper, then under 12 U.S.C. § 2055, which requires land bank property to be taxed "as other similar property held by other persons is taxed," the Land Bank mineral interests could not be taxed in Colorado unless the state constitution were changed in a way that would affect all mineral interest holders. We do not think Congress intended to require a state to

adopt the type of minerals-in-place appraisal pressed by the Land Bank as a precondition to taxation of the Bank's mineral interests. As long as the interest is characterized fairly as real estate, the taxation is reasonably connected to value, and all such interest owners are treated alike, the system is sufficient under 12 U.S.C. § 2055.

AFFIRMED.