**James C. GABRIEL, pro se, et al., Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Defendants,**

**and**

**Missouri Pacific Railroad Company, Defendant-Intervenor.**

Civ. A. Nos. 74–471, 74–470 and 74–469.

United States District Court, D. New Jersey.

April 20, 1976.

James C. Gabriel, pro se.

John Charles Vaiani, pro se.

William R. Wesson, pro se.

Thomas E. Kauper, Asst. Atty. Gen. by John H. D. Wigger, Washington, D. C., Jonathan L. Goldstein, U. S. Atty., Newark, N. J. by Ronald L. Reisner, West Long Branch, N. J., for U. S.

Fritz R. Kahn, Gen. Counsel, by Hanford O'Hara, Washington, D. C., for I. C. C.

Milton Rosenkranz, Hackensack, N. J., Leon Leighton, New York City, for defendant-intervenor.

Before HUNTER, Circuit Judge, and WHIPPLE and FISHER, District Judges.

## OPINION

CLARKSON S. FISHER, District Judge.

Plaintiffs, three disappointed stockholders of the Missouri-Pacific Railroad Company, (hereinafter MoPac), brought this action to set aside and annul an order of the Interstate Commerce Commission which granted authority to MoPac under the Interstate Commerce Act, 49 U.S.C. § 20a to issue securities in accordance with a plan submitted to the I.C.C. to recapitalize. Plaintiffs and others had opposed the plan before the I.C.C. Jurisdiction is conferred by virtue of §§ 1336(a), 1398(a), 2284, 2321–2325, 2401 of Title 28 U.S.C. and § 702 of Title 5. The purpose of the suit is to have this court set aside the determination of the I.C.C.

The terms of the plan of recapitalization have previously been settled and approved and reported in a comprehensive opinion and judgment by Judge Weinfeld in a class action brought by Class B stockholders of MoPac, to which class plaintiffs here belong. *Levin v. Mississippi River Corp.*, 59 F.R.D. 353 (S.D.N.Y.1973), aff'd. sub nom. *Wesson v. Mississippi River Corp.*, 486 F.2d 1398 (2d Cir. 1973), *cert. denied* 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973).

Upon reorganization in 1956 under Section 77 of the Bankruptcy Act (11 U.S.C. § 205), MoPac, a Missouri corporation, was authorized to issue two classes of stock: Class A (issued to former preferred stockholders) and Class B (issued to former common stockholders). Class A stockholders had certain preferences as to the payment of dividends and in the event of dissolution of the company. Each share of both types had one vote: 1.9 million shares (98%) were held by Class A stockholders, and 40,000 shares (2%) were held by Class B stockholders. Class A holders thus had operational control over the corporation, but on mergers, consolidations or reorganizations involving issuance of additional stock or the alteration of rights of the respective Classes, a majority of each Class was required to approve the action proposed. This situation caused a conflict between the two Classes, a conflict aggravated by the fact that Mississippi River Corporation, (Mississippi), had by 1963 acquired a majority of the Class A shares, while Alleghany Corporation (Alleghany) held a majority of the Class B shares.

In December of 1967 a class and derivative action was commenced on behalf of all Class B stockholders (Alleghany and others) against MoPac, Mississippi, and three directors of MoPac, to compel the payment of higher dividends, past and future. In that action, *Levin v. Mississippi River Corp.*, 59 F.R.D. 353 (S.D.N.Y.1973) *aff'd. mem.* 486 F.2d 1398 (2d Cir. 1973), *cert. denied* 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739, *reh. denied*, 415 U.S. 939, 94 S.Ct. 1457, 39 L.Ed.2d 497, it was also alleged that certain defendants had engaged in a conspiracy to "freeze out" Class B stockholders in various ways (improperly limiting dividends etc.) and that such acts were also in violation of the Securities Exchange Act and rules thereunder. Plaintiffs sought various types of relief from the Court, including an order compelling payment of higher past and future dividends.

After extensive discovery was undertaken by the parties in the succeeding months and years, during which time efforts at settlement were also pursued, a settlement was finally reached and presented to the court,[1] on the basis of a restruc-

---

1. The terms of the proposed settlement were described by the court as follows (59 F.R.D. at 360–361):

    (1) each share of Class A stock would be converted into one share of $5 cumulative preferred stock, with a liquidating preference of $100 per share, convertible into one share of new common after one year following ICC authorization of the issuance of new securities and redeemable at the option of MoPac

tured capitalization which would, if consummated, eliminate the controversy between Class A and Class B shareholders. In March 1973, the district court approved the settlement (59 F.R.D. at 373) and its decision was upheld on appeal (486 F.2d 1398) and certiorari was denied.

Under the proposed settlement, which the court approved, a majority of the minority Class B stockholders could reject the plan (59 F.R.D. at 374). Pursuant to the proposed settlement, and promptly following the court's decision, MoPac, in April 1973, filed its application with the Commission under Section 20a of the Interstate Commerce Act, 49 U.S.C. § 20a, for authority to issue the various stocks called for in the recapitalization plan. After notice of the application was given to all MoPac stockholders, hearings were held, at which plaintiffs herein and others expressed their opposition to MoPac's application.

At a special meeting of MoPac stockholders, held on June 15, 1973, 86.5% of the outstanding shares of Class A stock were voted in favor of the recapitalization plan and 83.4% of the outstanding shares of Class B stock were voted in favor of the recapitalization plan. Among the minority shares in both classes (i. e. those shares not owned by either Mississippi or Alleghany), 95.5% of Class A shares present and voting were voted in favor of the plan and 84.7% of the Class B shares present and voting were voted in favor of the recapitalization plan.

On December 14, 1973 Division 3, consisting of three Commissioners, issued its report and order granting MoPac's application. The order was made effective immediately, as time was of the essence in view of the deadline set forth in the settlement agreement. On December 28, 1973 the Commission issued an order denying petitions of plaintiffs and others to stay the effective date of the December 14, 1973 order. On January 23, 1974 the Commission issued its order denying petitions for reconsideration of the December 14 order and on March 4, 1974, the Commission issued an order denying petitions seeking a finding that an issue of general transportation importance was involved. On January 21, 1974 the MoPac plan of recapitalization was consummated. The instant actions were commenced on April 4, 1974 while the companion case in the Eastern District of Missouri, *Labelle Gillespie v. United States, et al.,* Civil Action No. 74–239 C(2) was commenced on April 2, 1974. The Three-

for $100 per share, after December 31, 1975. This would require the issuance of 1,864,052 shares of the new stock to the present holders of the Class A stock, of which Mississippi would be entitled to receive 1,158,395 shares;

(2) each share of Class B stock would be converted into sixteen shares of new common stock and $850 cash. This would require the issuance of 635,696 shares of new common stock to the present holders of Class B stock, of which Alleghany would be entitled to receive 339,888 shares; this would require a cash payment by MoPac of $33,771,350;

(3) both preferred stock and common stock would have one vote per share;

(4) the Plan and amendment would have to be approved by 75% of the outstanding shares of each class of MoPac stock, including a majority of the shares of each class other than those held by Mississippi and Alleghany—that is, a majority of the minority stockholders of each class;

(5) the issuance of the new shares would have to be approved by the Interstate Commerce Commission;

(6) upon such approvals, Mississippi is required to make a cash tender offer to all Class B stockholders for at least 400,000 shares (approximately 63%) of the new common stock, at $100 per share, and Alleghany (but not the minority B shareholders) must tender all its new common stock (339,888 shares). If more than 400,000 shares are tendered, Mississippi may purchase the shares on a pro rata basis; this would require a cash payment by Mississippi of at least $40,000,000;

(7) all claims asserted in this action and any other claims against the defendants which are based upon or arise from any of the matters alleged in the complaints, regardless of the legal theory upon which they are based, will be dismissed with prejudice;

(8) fees awarded to plaintiffs' attorneys will be paid by MoPac and Mississippi.

If the recapitalization and tender offer are not consummated by December 31, 1973, the settlement agreement would be terminable at the option of Alleghany, Mississippi or MoPac.

\*    \*    \*    \*    \*    \*

Judge Court which was convened in *Labelle Gillespie v. United States, et al., supra*, stated in their opinion:

> "The amendment to MoPac's Articles of Association was made in conformity to Missouri law. MoPac's Articles of Association expressly provide that the rights of all holders of capital stock of the company are subject to change, alteration, abrogation, or repeal in any matter permitted by the laws of Missouri. And Section 388.220, R.S.Mo., specifically authorizes modifications of the stock structure of railroad companies such as were here made. Hence, since far more than the requisite number of shareholders of each class of stock has voted in favor of the changes, the question before the Interstate Commerce Commission on the Section 20a application was a very narrow one of whether the issuance of the new securities to effectuate the plan and amendment to the Articles of Association would be 'for some lawful object within [MoPac's] corporate purposes and compatible with the public interest', and would be 'reasonably necessary and appropriate for such purpose'."

■ This court's function is limited. The decisions of independent regulatory agencies are generally sustained if they are within the authority of the agency's statutory power and are based upon appropriate findings which are in turn supported by substantial evidence. *Consolo v. Federal Maritime Comm'n.*, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *United States v. Pierce Auto Freight Lines*, 327 U.S. 515, 535, 66 S.Ct. 687, 90 L.Ed. 821 (1945). This standard applies in cases involving Commission decisions under § 20a of the Act. *Chicago S.S. and S.B.R.R. v. United States*, 221 F.Supp. 106, 109 (N.D. Ind.1963). "The test of judicial review of an order of the Commission is whether the action of the Commission is supported by 'substantial evidence' on the record viewed as a whole." *Metropolitan Shipping Agents of Illinois, Inc. v. Interstate Commerce Commission*, 342 F.Supp. 1266, 1268 (D.N.J. 1972).

The Commission's review in the MoPac recapitalization was limited under Section 20a(2) of the Act to a determination of whether the issuance of securities in connection with the plan would be " * * * for some lawful object within [the carrier's] corporate purposes, and compatible with the public interest . . . " and " . . . is reasonably necessary and appropriate for such purpose".

■ The Commission, in an exhaustive report, found that the recapitalization was the result of extensive arms-length bargaining by MoPac, Mississippi and Alleghany and was analysed by independent financial and investment advisers specializing in corporation and transportation finance. The I.C.C. further noted that the settlement was approved by the court in the *Levin* case, after due consideration being given to the rights and possible remedies of each class of stockholders. The plan of recapitalization had been approved by a majority of each class of stockholders and by a majority of the minority stockholders of each class. The Commission further found that the allocation of new shares (1 new preferred share for 1 share of old Class A stock, and 16 shares of new common for 1 share of old Class B plus a cash sum) is reasonable and fair in view of the present and prospective worth of MoPac. The I.C.C. summarized in their report (p. 59) as follows:

> "In our opinion, the proposed plan is not contrary to the public interest. In fact, considering the benefits to each class of stock and the advantages to the carrier, it is our conclusion that the plan of recapitalization will be in the best interest of the stockholders and the carrier and will be compatible with the public interest."

The benefits of the recapitalization plan to MoPac, include the elimination of the old class voting system and the dividend conflict which caused considerable dissension in the past and the fact that the Mississippi River Corporation would own a majority of both preferred and common stocks, thereby eliminating the old Class B veto power. As a result, MoPac will have greater management flexibility and stability and MoPac

## 814

will be in a better position to consider and be considered for mergers and consolidations in the future.

As to the main contention of the plaintiffs asserting that they were unlawfully deprived of the value of their old Class B stock on the theory that the "book value" of the Class B stock was almost $9,000 a share, the I.C.C. pointed out that book value cannot be the measure of fair value of stock; rather, earnings must be considered and the capitalized earnings method is the proper means of analysis. See, *Schwabacher v. United States*, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305 (1948); *Boston & M. R. Securities Modification*, 275 I.C.C. 397, 431–33 (1950); *Levin v. Mississippi River Corp.*, supra, at 369.

As to the other contentions of the plaintiff, they do not merit extensive comment since the Commission's findings on these issues were also warranted.[2]

We do not find any reason to differ with those findings. Our sole function is to determine whether the decision of the Commission is consistent with the public interest and lawful. We agree that it is and affirm those findings and decision.

Therefore, the order of the Commission questioned herein should be and is hereby affirmed.

Submit an Order.

---

**2.** As the court stated in *Labelle Gillespie v. United States et al.*, Civil Action No. 74–239 C(2):

"Other contentions of plaintiff, rejected by the Commission, included (1) that an 'immutable' contract was created by the 1956 plan of reorganization could not be altered over the dissent of a single Class B shareholder; (2) that the settlement plan approved by Judge Weinfeld has a 'congenital defect' in that the *Levin* suit for dividends was 'illegally' converted into a suit for recapitalization; (3) that the settlement plan was forced upon the Class B shareholders by 'court fiat'; (4) that the proxy statement for the stockholders' meeting was false and misleading; and (5) that MoPac, Mississippi and their respective Boards' Directors were guilty of conspiracy, fraud and deceit.

We agree that the Commission's findings on these issues were warranted. So, too, we find no merit to plaintiffs further assertion that Alleghany 'sold out' the other Class B stockholders by entering into the settlement agreement."