**Lutul LOVE and Larry Brown on their own behalf, and on behalf of all others similarly situated, Appellees,**

v.

**UNITED STATES DEPARTMENT OF HOUSING & URBAN DEVELOPMENT, Samuel Pierce, Secretary U.S. Department of Housing & Urban Development and D & M Associates, Melvin Pugatch, Allegheny Management Company and Richard and Paula Gilliam, on behalf of themselves and all others similarly situated and Broadhead Fording Associates and Broadhead Associates.**

**Appeal of UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and Samuel Pierce.**

**No. 82–5061.**

United States Court of Appeals, Third Circuit.

Argued Oct. 21, 1982.

Decided March 31, 1983.

As Amended April 8 and Aug. 19, 1983.

Donald Driscoll (argued), Neighborhood Legal Services Ass'n, Pittsburgh, Pa., for appellees.

J. Paul McGrath, Asst. Atty. Gen., J. Alan Johnson, U.S. Atty., Anthony J. Steinmeyer, Margaret E. Clark (argued) Attys., Civ. Div., U.S. Dept. of Justice, Washington, D.C., for appellants; Howard M. Schmeltzer, Claudia J. Harris, Dept. of Housing and Urban Development, Washington, D.C., of counsel.

Before WEIS and BECKER, Circuit Judges, and CAHN,* District Judge.

**OPINION OF THE COURT**

BECKER, Circuit Judge.

At issue in this appeal is that part of a district court order which requires appellant Secretary of Housing and Urban Development ("HUD") to implement a tenant-comment procedure for identifying unreasonable provisions in leases of federally subsidized housing. Because we find that neither the governing statute nor HUD's own rulemaking regulations provide for this additional procedure, we will reverse that part of the district court's order. The remainder of the order will be affirmed.

---

* Honorable Edward N. Cahn, United States District Judge for the Eastern District of Pennsyl-

vania, sitting by designation.

## I.

Lutul Love and Larry Brown are tenants of Westgate Village Properties, a Pittsburgh housing project subsidized by HUD pursuant to sections 221(d) and 236 of the National Housing Act, as amended, 12 U.S.C. §§ 1715l(d), 1715z–1 (1976 & Supp. V 1981), and section 8 of the Housing Act of 1937, as amended, 42 U.S.C. § 1437f (1976 & Supp. IV 1980).[1] In early 1980, their landlords instituted summary eviction proceedings because appellees were keeping dogs[2] in their apartments in violation of the "no pets" provision in their leases.[3] Judgments of possession were entered against both Mr. Love and Mr. Brown.

On July 29, 1980, appellees filed suit in district court to enjoin enforcement of the judgments of possession. They alleged three grounds for relief. First, appellees contended that their landlords had violated the eviction procedures prescribed by HUD regulations. See 24 C.F.R. §§ 886.122, 450.-1–.7 (1982). Second, they alleged that the eviction procedures, as well as other terms, specified in their lease agreements were unreasonable.[4] Finally, appellees argued that HUD had failed to comply with sections 202(b)(3) and 202(c) of the Housing and Community Development Amendments of 1978, 12 U.S.C. § 1715z–1b(b)(3), (c) (Supp. V 1981). Those sections require the Secretary of HUD to promulgate regulations prohibiting unreasonable lease provisions in rental agreements for HUD-subsidized housing:

(b) The Secretary shall assure that—

* * * * * *

(3) leases approved by the Secretary provide that tenants may not be evicted without good cause or without adequate notice of the reasons therefor and do not contain unreasonable terms and conditions . . . .

* * * * * *

(c) The Secretary shall promulgate regulations to carry out the provisions of this section not later than 90 days after October 31, 1978.

In addition to an injunction against the commencement, prosecution, or enforcement of any eviction proceeding against them, appellees sought (1) a declaratory judgment that HUD's failure to promulgate regulations in accordance with the mandate of section 202(c) violated appellees' statutory right to have their rental agreements free of unreasonable terms; and (2) preliminary and permanent injunctive relief requiring HUD to promulgate and enforce appropriate regulations.[5] Appellees' complaint did not request that any particular procedure be used in drafting the regulations.

On December 9, 1980, the district court ruled that the eviction proceedings violated the notice provisions established by HUD regulations,[6] and the court therefore issued a preliminary injunction against eviction of appellees and all tenants of section 221(d)(3) and section 236 housing projects in Allegheny County, Pennsylvania.[7]

---

1. The National Housing Act authorizes HUD to help private industry provide housing for low and moderate income families. Sections 221(d)(3) and (d)(5) permit HUD to issue insurance on construction mortgages with below-market interest rates for the construction of low-cost housing projects; § 236 authorizes HUD's making interest-reduction payments directly to the owners of such projects. Additionally, tenants of assisted projects are eligible for rent subsidies from HUD pursuant to the Housing Act of 1937.

2. One of appellees owned a chihuahua; the record does not disclose the breed of the other dog.

3. The landlords also alleged that appellees were undesirable tenants.

4. Lease terms that appellees considered unreasonable included: (1) the right of the landlord to terminate the lease, re-enter the premises and evict the tenant by force or otherwise if the tenant defaulted in the performance or observance of any term or condition under the lease; and (2) waiver of the notice required by law to be given to the tenant as a condition precedent to evicting him for breach of any condition of the lease.

5. The Secretary had not promulgated regulations when this action was filed.

6. Although appellees had been advised by Westgate Village that they must either remove their dogs within thirty days or vacate the premises, Westgate neither gave notice nor ascertained whether the dogs had been removed prior to commencing eviction proceedings.

7. Although appellees' motion for class certification was denied, the private defendants, D & M Associates, Melvin Pugatch, Allegheny Management Company, Richard Gilliam and Paula Gilliam were dismissed as parties by interim

On August 14, 1981, before the district court had ruled on appellees' allegation that HUD had failed to comply with its statutory mandate, HUD wrote to its Pittsburgh and Philadelphia field offices directing them to instruct all owners of section 236 and 221(d)(3) housing projects to remove certain unreasonable provisions from current or proposed lease agreements. The enumerated provisions included, but were not limited to, the following:

(a) Confession of Judgment;

(b) Exculpatory Clause;

(c) Waiver of Legal Notice by Tenant Prior to Actions for Eviction or Money Judgments;

(d) Waiver of Legal Proceedings;

(e) Waiver of Jury Trial;

(f) Waiver of Right to Appeal Judicial Error in Legal Proceedings;

(g) Tenant Chargeable with Costs of Legal Proceedings Regardless of Outcome; and

(h) Distraint for Rent or Other Charges.

The letter further stated that the directive would remain in effect until HUD had issued a national model form of lease that would exclude these and other unreasonable lease provisions.

On November 4, 1981, the district court granted permanent injunctive relief requiring HUD to promulgate interim or final regulations within ninety days. The regulations were to assure that the unreasonable provisions specified in the August 14, 1981 letter, as well as any other unreasonable provisions, would no longer be contained in leases for section 236 and section 221(d)(3) housing. The order further provided that HUD use a tenant-comment procedure to aid its identification of such provisions:

In determining which other lease provisions are prohibited as unreasonable HUD shall require through the required regulation that owners of Section 236 and Section 221(d)(3) Below Market Interest Rate projects within thirty days of the date of the regulation give to tenants in such projects notice and an opportunity to submit to the owner and or the local HUD field office with jurisdiction over the project's leases within thirty days of such notice their comments as to which other lease provisions in use are unreasonable. The notice shall provide that any lease which is intended to be submitted to HUD for approval which differs from the lease then in use shall be made available to the tenants for their inspection and copying during normal business hours at the project office or such other address within the project as is stated. At the end of the thirty day period the owner shall forward to HUD a copy of the comments submitted to the owner, any comments the owner may have as to these and the lease form upon which the comments were based for HUD's approval. After HUD has considered the proposed lease and comments and has made its determination to approve or disapprove the lease it will furnish the owner with a written statement of the reasons for its approval or disapproval. The owner shall notify the tenants of such reasons for approval or disapproval and take such other actions as are determined by HUD to implement changes to the present lease where appropriate.

*Love v. HUD,* Civil Action No. 80–1041B (W.D.Pa. Nov. 4, 1981) (order granting injunction).[8]

Because HUD was already in the process of promulgating regulations prohibiting unreasonable lease provisions[9]—a process that

---

stipulation, subject to the understanding that they would abide by any court order that explicated proper procedure under the applicable laws and constitutional guarantees. These defendants have advised us that they take no position with respect to the legal issues raised on this appeal, and that they have voluntarily chosen not to file a brief or participate in oral argument.

**8.** The Court issued a second order on November 4 that permanently enjoined the eviction of all tenants of § 221(d)(3) and § 236 housing projects in Allegheny County, Pennsylvania until the owners of such projects comply with the notice requirements established by HUD regulation. *Love v. HUD,* Civil Action No. 80–1041B (W.D.Pa. Nov. 4, 1981) (order granting permanent injunction).

In addition, the November 4, 1981 orders, which the parties concede were not final, were supplemented on December 22, 1981, by a "final order" giving the Secretary ninety days to amend the notice requirements of 24 C.F.R. § 450.4(a).

**9.** While its appeal was pending, HUD issued Handbook 4350.3, *Occupancy Requirements of*

has since been completed—HUD does not appeal from the part of the district court's order that requires it to do so.[10] HUD does object, however, to the facet of the order that requires HUD to institute a tenant-comment procedure to assist the Secretary's identification of unreasonable lease provisions. HUD's objections are three-fold. First, HUD argues that section 202(b)(1)—the only provision of the 1978 amendments that deals with tenant comment—does not pertain to lease provisions, makes tenant comment optional with the Secretary, and seems to exclude lease agreements from the ambit of tenant comment.

Second, HUD argues that the district court's requirement is superfluous because solicitation of public comment is already required by general HUD rulemaking regulations, 24 C.F.R. §§ 10.1–10.20 (1982). Indeed, HUD points out, not only do tenants have the opportunity to comment on any aspect of HUD policy at any time, *see id.* § 10.20, but public comments were expressly solicited when HUD published an interim regulation prohibiting the eight lease provisions previously identified in the letter to HUD field offices.[11]

Third, invoking the principles of *Vermont Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), HUD asserts that the district court's order constitutes an unwarranted intrusion on the Agency's prerogative, neither legiti-

mized as an exercise of the district court's equitable powers nor required by due process. Appellants underscore this argument by pointing to the cumbersome nature of the tenant-comment procedure and the burden it imposes upon the agency: the order provides for the processing of tenant complaints through HUD field offices, whose personnel, unlike the personnel in HUD's central office, are not trained in evaluating tenant lease terms.[12] For the reasons that follow, we believe that appellant's position is substantially correct.

## II.

The identification of unreasonable lease provisions is accomplished by informal rulemaking that is authorized by statute and governed by HUD regulations; it is an essentially legislative process resulting in regulations that are of nationwide applicability. In *Vermont Yankee, supra,* the Supreme Court stated that section 4 of the Administrative Procedure Act (APA), 5 U.S.C. § 553 (1976) sets forth the maximum procedural requirements that Congress intended to have courts impose upon agencies in such a rulemaking context. The Court reasoned that a hovering judicial spectre would scare agencies into adopting full adjudicatory procedures in every case in order to foreclose the possibility that a substantive rule would be vacated based on a court's perception of "better" or "more correct" procedure. *See id.* at 546–47, 98 S.Ct.

*Subsidized Multifamily Housing Programs,* which contained a model lease excluding the eight provisions that were specified in the district court's order and that originally had been prohibited by HUD in its August 14, 1981, letter-directive.

**10.** Appellants successfully moved for a stay of judgment pending appeal.

**11.** On July 23, 1982, HUD published an interim regulation, effective immediately, prohibiting the identified eight lease provisions and asking that public comment be submitted to HUD's Office of General Counsel in Washington, D.C. on or before September 7, 1982, for consideration before the issuance of a final rule. *See* 47 Fed.Reg. 31868, 31870–71 (1982).

**12.** Comments solicited during rulemaking pursuant to 24 C.F.R. §§ 10.1–10.18, and petitions for the issuance, amendment or repeal of a rule pursuant to 24 C.F.R. § 10.20, *see infra* note 16, are submitted for analysis and policy consider-

ation to HUD's central office in Washington, D.C. Field office personnel currently are not involved in evaluating lease provisions. Although they apparently do take action on requests by landlords to approve new and modified lease agreements pursuant to 24 C.F.R. §§ 236.75, 221.529 and 450.4(d) (1982), they are guided in their decisions by the Secretary's rulings in letter, handbook and regulation form; they may not themselves determine whether a lease provision should be prohibited as unreasonable.

We note, however, that the burden is not quite as great as might result from one possible reading of the district court's order. The parties agreed at oral argument that the district court's order was most reasonably interpreted as requiring tenant comments to be solicited on a one-time basis, and not as requiring HUD to solicit comments each time a landlord proposed to modify a lease. Even as so limited, we conclude that the district court exceeded its authority by mandating the establishment of a comment procedure.

at 1213; *see also Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 303, 101 S.Ct. 2352, 2374, 69 L.Ed.2d 1 (1981) (district court erred in substituting its own policy preference that agency respond to petition for relief from agency orders within a time shorter than that required by statute or regulation). Thus absent constitutional constraints, a superseding statutory or regulatory mandate, or extremely compelling circumstances, the agencies are free to fashion their own rulemaking procedures. 435 U.S. at 524–25, 98 S.Ct. at 1202.[13] None of these supervening factors are present in this case.

We note first that neither the language nor legislative history of section 202(b)(3) & (c) suggests, much less requires, that the Secretary use a particular procedure to determine what constitutes an unreasonable lease provision. Moreover, the only provision in the statute that contemplates tenant comment seems to reject the course of action ordered by the district court. Section 202(b)(1), which was amended on August 31, 1982, makes quite clear that the tenant comment for which it provides is optional with the Secretary:

---

**13.** This court has previously applied the precepts of *Vermont Yankee. See, e.g., Laird v. ICC,* 691 F.2d 147, 154–55 (3d Cir.1982) (court should not interfere with agency decision to review case on written submissions rather than by oral hearing when no material facts are in dispute).

**14.** Because appellees sought prospective relief only, and because the effective date of the amendment preceded the district court's order, appellees concede that this case is governed by the amended version of § 202(b)(1). Nevertheless, the original version also contemplated that tenant comment could be imposed at the Secretary's discretion:

> (b) The Secretary shall assure that—
> (1) where the Secretary's written approval is required with respect to an owner's action *and the Secretary deems it appropriate,* tenants have adequate notice of, reasonable access to relevant information about, and an opportunity to comment on such actions (and in the case of a project owned by the Secretary, any proposed disposition of the project) and that such comments are taken into consideration by the Secretary . . . .

12 U.S.C. § 1715z–1b(b)(1) (Supp. II 1978) (emphasis added).

**15.** Even in 1978 Congress recognized that the tenant-comment provision would potentially be

---

> (b) The Secretary shall assure that—
> (1) where the Secretary's written approval is required with respect to an *owner's request for rent increase, conversion of residential rental units to any other use (including commercial use or use as a unit in any condominium or cooperative project), partial release of security, or major physical alterations and the Secretary deems it appropriate,* tenants have adequate notice of, reasonable access to relevant information about, and an opportunity to comment on such actions (and in the case of a project owned by the Secretary, any proposed disposition of the project) and that such comments are taken into consideration by the Secretary
> . . . .

12 U.S.C. § 1715z–1b(b)(1) (Supp. V 1981) (emphasis added).[14]

More important, the legislative history of the amended version reveals that Congress intended to *limit* the procedures outlined in section 202(b)(1) to the owner requests enumerated therein. *See* H.R.Conf.Rep. No. 97–208, 97th Cong. 1st Sess. 700, *reprinted in* 1981 U.S.Code Cong. & Ad.News 396, 1059.[15] Owner modification of lease provi-

---

applicable only to certain "major actions of an owner" (which it identified in the conference report accompanying the legislation) and that the Secretary would, in any event, retain ultimate discretion in deciding when to solicit tenant comments:

> To better assure that the potential benefit of tenants' experience is reflected in the operation of a project, the Secretary has been directed to assure that with respect to those major actions of an owner for which the Secretary's written approval is required, and for which the Secretary believes that tenants have a significant contribution to make in assisting in the formulation of the Secretary's decision, tenants have an opportunity to provide such input to the Secretary and that the Secretary will consider the tenant comments in a timely manner and avoid delay. The conferees do not envision that the Secretary will require such input in all of the Secretary's decisions affecting a project, such as releases from residual receipts accounts, but only major actions such as rent increases, a change in ownership or management, a conversion of use, release of security, a demolition, or major physical alterations to the project.

H.R.Conf.Rep. No. 95–1792, 95th Cong., 2d Sess. 66–67, *reprinted in* 1978 U.S.Code Cong. & Ad.News 4872, 4886–87.

sions is not one of the requests so enumerated. Thus the statute does not require (and may well implicitly preclude) the tenant-comment procedure ordered by the district court.

There is also no merit to appellee's contention that the Constitution mandates such a procedure. A determination whether lease provisions are unreasonable on their face does not require the resolution of facts on a case-by-case basis; the Secretary was promulgating regulations of broad, general, and prospective application. As such, the rulemaking in which the Secretary was engaged here was essentially legislative, not adjudicative, in nature, and the Secretary was unlikely to make an "incorrect" decision because of lack of individual tenant input. It has long been established that the more stringent requirements of due process which attach in an adjudicatory proceeding are generally not compelled when agency action of a more legislative nature is pursued:

> Where a rule of conduct applies to more than a few people it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole.... There must be a limit to individual argument in such matters if government is to go on.

*Bi-Metallic Investment Co. v. State Board of Equalization,* 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915) (citation omitted); *accord Rogin v. Bensalem Township,* 616 F.2d 680, 693 (3d Cir.1980), *cert. denied,* 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).

Moreover, the procedure mandated by the district court would not have afforded significantly greater protection of appellees' rights. Appellees had ample opportunity to express to HUD their views on the reasonableness of their leases: not only does HUD's general procedure permit tenant comment at any time,[16] but HUD expressly solicited public comment—which comprehended tenant participation—prior to issuing a rule concerning unreasonable lease provisions. *See supra* note 11. These opportunities for public comment during HUD's rulemaking process more than satisfy the requirements of the due process clause.

Finally, we note that appellees have made no showing that the circumstances of this case were sufficiently compelling to warrant the imposition of the additional procedure.[17]

---

**16.** 24 C.F.R. § 10.20 (1982) provides, in pertinent part:

> (a) Any interested person may petition the Secretary for the issuance, amendment, or repeal of a rule....

> (b) No public procedures will be held directly on the petition before its disposition. If the Secretary finds that the petition contains adequate justification, a rulemaking proceeding will be initiated or a final rule will be issued as appropriate. If the Secretary finds that the petition does not contain adequate justification, the petition will be denied by letter or other notice, with a brief statement of the ground for denial. The Secretary may consider new evidence at any time; however, repetitious petitions for rulemaking will not be considered.

**17.** HUD did not invoke § 4 of the APA as a basis for its position in this case, apparently because of its view that the exemption in § 4(a)(2) applies; § 4(a)(2) exempts from rulemaking "a matter relating to agency management or personnel or to public property, loans, grants, benefits, or contracts." HUD nonetheless cited to us and did rely on *Vermont Yankee*—a rulemaking case—as well as its own regulations which set forth the procedural requisites for rulemaking—28 C.F.R. §§ 10.1–10.20 (1982).

There is no doubt that the principles of *Vermont Yankee* apply in the rulemaking context, regardless of whether § 4 itself is involved. Even though HUD's procedures in this case conform to the notice and comment provisions of § 4 of the APA, we need not—and therefore do not—reach the question whether HUD's practice of soliciting public comment in situations such as that involved in this case is required by force of the APA. We hold only that the opportunity provided by HUD for tenant participation in the rulemaking process forecloses any argument by the appellees that they were denied their due process rights or that any compelling circumstances exist which would permit district court interference with agency procedure.

## III.

The portion of the district court's orders that directs HUD to establish a tenant-comment procedure will be reversed. In all other respects, the orders of the district court will be affirmed.